## JOHN J. CURRAN ET AL.
### v.
## MARY BERNARD.

SALE—CHANGE OF POSSESSION.—A purchaser of personal property, in order to acquire title as against creditors of the vendor, must reduce it to actual possession before their rights attach. Where the property is capable of being removed, there must be a real and permanent delivery and change of possession, to enable the purchaser to hold the property against an officer levying an execution in favor of a creditor of the vendor.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding. Opinion filed May 25, 1880.

This was an action of replevin brought by Mary Bernard, against John J. Curran, Charles Kern and Homer B. Galpin, to recover possession of a horse, harness and buggy, claimed by the plaintiff as her property. The suit was commenced before a justice of the peace of Cook county, where judgment was rendered for the defendants. In the County Court of Cook county, where the cause was taken by appeal, two trials have been had, each resulting in a verdict, finding the issues for the plaintiff, and also finding the right of property to be in her. The first of said verdicts was set aside by the court on motion of the defendants, but the court denied the defendants' motion for a new trial after the second verdict, and rendered judgment on said verdict for the plaintiff, adjudging the right of property to be in her, and for costs.

The facts disclosed by the record are substantially as follows: On the 15th day of October, 1878, said Curran recovered a judgment against the firm of Witmer & Bernard, and on the same day caused an execution to be issued thereon and placed in the hands of said Kern, then sheriff of Cook county. Said Witmer & Bernard were then carrying on a furniture manufactory in Chicago, and were using in their business the horse, buggy and harness in question. Several months before, said

horse had been boarded at said Curran's livery stable, and there is no dispute that at that time the property in question belonged to Witmer and Bernard. On November 1, 1878, defendant Galpin, as deputy sheriff, levied said execution upon said horse, harness and buggy, and thereupon the plaintiff brought this suit, claiming title to said property by virtue of a bill of sale from said Witmer & Bernard to her, dated August 1, 1878.

The circumstances of the execution of said bill of sale were these: The plaintiff at the time had been working for Bernard, of the firm of Witmer & Bernard, as his housekeeper, for some nine or ten months, at $2.50 per week. She had then received very little money on account of her wages, and Bernard, on being applied to by her for money, told her that he could not spare any money from his business, but that if Witmer was willing, he would give her a bill of sale of the horse, buggy and harness. To this she consented, and a bill of sale was accordingly drawn up and signed by both Bernard and Witmer, and brought home to the plaintiff by Bernard. At that time the horse, buggy and harness were being used daily by Witmer & Bernard in their business, and at night Bernard was in the habit of bringing them home with him and of keeping them in his own barn, and in his personal possession. On the occasion in question he brought them home as usual, hitched them outside, and took the bill of sale into the house and handed it to the plaintiff, saying that he had brought her horse, buggy and harness, and that the paper he handed her was the bill of sale of the same to her. She read the paper over and then handed it back to Bernard, telling him to put it in a safe place, as she might lose it; and he put it in his pocket, and afterwards took it to his office and deposited it in his safe. The plaintiff then directed Bernard to put the horse, buggy and harness in the barn, which he accordingly did, and afterwards, in the course of the evening, it was agreed between them that he should stable and take care of the property and feed the horse for the use of the same, until she could dispose of it. Under this arrangement, the property remained in the custody of Bernard, or of his firm, until it was taken on Curran's execution.

It appears from the testimony of both the plaintiff and said Bernard, that the plaintiff never took the property or did anything with it, and that it remained in all respects the same as it was before the execution of the bill of sale; that Witmer & Bernard continued to use it in their business precisely as they had previously done, and that neither the plaintiff, Bernard, or the firm used the property or treated it in any respect differently from what they did before the sale.

Mr. PLINY B. SMITH, for appellants; that there was no sufficient delivery, cited Thompson v. Yeck, 21 Ill. 73; Lewis v. Swift, 54 Ill. 436; Thompson v. Wilhite, 81 Ill. 356; Ticknor v. McLellan, 84 Ill. 471; Allen v. Carr, 85 Ill. 388.

BAILEY, P. J.    It is a well settled rule of law that a purchaser of personal property, in order to acquire title as against creditors of the vendor, or purchasers without notice, must reduce it to actual possession before their rights attach.    Lewis v. Swift, 54 Ill. 436; Broadwell v. Howard, 77 Id. 305; Corgan v. Frew, 39 Id. 31; Lefever v. Mires, 81 Id. 456; Richardson v. Rardin, 88 Id. 124.    Where the property is of such character as to be capable of being removed, there must be a real and permanent delivery and change of possession, to enable the purchaser to hold the property against an officer levying an execution upon it for the debt of the vendor.    And if the property is permitted to remain with the vendor, the sale will be deemed fraudulent in law as to creditors and subsequent purchasers, although it may have been made in good faith and for an adequate consideration.    Allen v. Carr, 85 Ill. 388; Ticknor v. McClelland, 84 Id. 471; Thompson v. Wilhite, 81 Id. 356.

It is clear that in the present case, no delivery of possession to the plaintiff is shown sufficient to protect the property against Curran's execution.    She neither took nor attempted to take manual possession.    Instead of assuming charge of the property herself, even for the time being, she directed Bernard to retain it in his own hands, and arranged with him to keep and use it until she had an opportunity to dispose of it.    The possession thus continued with Bernard and his firm unchanged down to the date of the levy.

There is no view of the evidence we are able to take under which the plaintiff ought to recover. The verdict is entirely unsupported by the evidence, and the judgment will therefore be reversed and the cause remanded.

Judgment reversed.